**Gerald HARDIN, Petitioner,**

v.

**Carl G. HOCKER, Warden, Nevada State Prison, Respondent.**

**Civ. No. 1998–R.**

United States District Court
D. Nevada.
April 19, 1968.

Gary A. Sheerin, Carson City, Nev., for petitioner.

C. B. Tapscott, Deputy Atty. Gen., State of Nevada, Reno, Nev., and Gene Barbagelata, Deputy Dist. Atty., Washoe County, Nev., Reno, Nev., for respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

THOMPSON, District Judge.

This action came on for trial before the Court on April 11, 1968, Petitioner being represented by Gary A. Sheerin, Esq., appointed by this Court, and Respondent being represented by Deputy Attorney General C. B. Tapscott and Washoe County Deputy District Attorney Gene Barbagelata.

Mr. Sheerin is commended for his excellent presentation of the evidence and the law on behalf of Petitioner.

The Court finds the following facts to be true:

On a trip in the latter part of August, 1964, from Washington, D. C., to San Francisco, California, with a one week stop-over in Chicago, Gerald Hardin's car broke down in Reno, Nevada. Hardin was without funds but was able to borrow money against the car to have it repaired. On or about September 3, 1964, Hardin was arrested for vagrancy by the Reno Police Department, appeared immediately before a Municipal Judge and pleaded not guilty. The next day, he changed his plea to guilty because he was told by a policeman that he would receive a ten day sentence which was enough time for the Police Department to check his record for prior convictions. The Municipal Judge sentenced him to thirty days in the City Jail but suspended imposition of sentence on the condition that Hardin leave town permanently before nightfall. Such treatment in normal police parlance is known as a "floater." This encounter with the law tended to confirm a pre-existing impression in his mind that Nevada law enforcement gave less than full protection to an individual's constitutional rights.

Hardin did not leave town. On September 17, 1964, he was arrested as a burglary suspect. He was placed in the City Jail for questioning and lodged for three days in a solitary cell. While in that cell, he was kept naked when not being interrogated, and on two or three occasions, was doused with a pail of water thrown through the bars of his cell by a jailer. Thereafter, and until October 6, 1964, Hardin was placed in a cell with three other men where he was fully clothed. During this period of about fifteen days, he was twice refused food by a jailer at the regular feeding

time. Also, he was questioned intermittently but not oppressively.

On October 6, 1964, Petitioner was presented to a magistrate and transferred to the County Jail. Petitioner requested the appointment of counsel but was told by a jailer that this could not be done before appearance in the District Court. In order to obtain counsel, Petitioner, on October 9, 1964, executed a waiver of the preliminary examination. On November 5, 1964, in arraignment proceedings in the Washoe County District Court, Petitioner was handed a copy of the Information filed October 29, 1964, and counsel was appointed to represent him and a co-defendant.

On November 10, 1964, the arraignment proceedings were continued until November 24, 1964 at the request of counsel. The attorney visited Petitioner twice at the Jail, and upon learning from Petitioner of Petitioner's two prior felony convictions, informed him of the possibility of the filing of an habitual criminal charge. The attorney did not discuss this matter at any time with any representative of the District Attorney's Office. The attorney did not try to persuade Petitioner to plead guilty. On November 24, 1964, Petitioner pleaded guilty to the burglary charge in the District Court and the plea was accepted by the Judge without first inquiring into the voluntariness of its tender. On December 11, 1964, Petitioner was sentenced to a term of one to fifteen years.

Neither Petitioner's attorney nor anyone from the District Attorney's Office, nor any law enforcement officer ever sought to induce Petitioner to plead guilty to the burglary charge in order to avoid prosecution as an habitual criminal.

■ On November 24, 1964, when Petitioner pleaded guilty to the burglary charge, he did so voluntarily. He did not act under and was not influenced by his mistreatment in the City Jail, the delays, or the knowledge of the possibility of an habitual criminal charge. He did not confess guilt prior to his plea of guilty, but his voluntary plea of guilty stands as a confession of his guilt of the criminal misconduct charged in the Information. The plea of guilty was entirely consistent with the court-appointed attorney's knowledge of the facts based, in part, on his conferences with Petitioner.

As conclusions of law and of mixed law and fact, the Court states:

■ 1. The treatment of this Petitioner in the Reno City Jail and the long delay between arrest and appearance before a committing magistrate, as well as the long delay between the initial commitment by the committing magistrate and appearance before the District Court are wholly inexcusable and should have the serious attention of the responsible officials in charge of such proceedings.

2. After an attorney was appointed to represent Petitioner and a reasonable time allowed for conferences and investigation, Petitioner was freed from the influences of the earlier mistreatment and delays and preconceptions of the quality of Nevada justice. The refusal of Petitioner to confess during the period of mistreatment and delays negates these factors as causes influencing his ultimate plea of guilty.

■ 3. No state official or law enforcement officer was responsible for Petitioner's knowledge of the provisions of the Nevada Habitual Criminal Act and the plea of guilty was not coerced by threat of sentencing as an habitual criminal if a not a guilty plea should be entered.

■ 4. Petitioner's plea of guilty was voluntarily and understandingly entered after conferences with counsel and with full knowledge of the possible consequences and represents a candid and truthful confession of the crime charged.

5. Petitioner's rights under the Constitution of the United States were not violated.

It is therefore ordered and adjudged that the petition for a writ of habeas corpus be, and it hereby is, denied.